IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ROBERT LEANDER STIGGERS                                          PETITIONER
ADC #133728

V.                          5:14-cv-00219-KGB-JTK

WENDY KELLEY, Director,                                          RESPONDENT
Arkansas Department of Correction[1]

### PROPOSED FINDINGS AND RECOMMENDATIONS INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

---

[1] Wendy Kelley replaced Roy Hobbs as Director of the Arkansas Department of Correction. Under Federal Rule of Civil Procedure 25(d), Wendy Kelley is automatically substituted as Respondent in this action.

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

Petitioner Robert Stiggers, an inmate at the Arkansas Department of Correction, filed this timely petition for a writ of habeas corpus pursuant to 18 U.S.C. § 2254 after a Pulaski County, Arkansas, jury found him guilty of first degree murder and first degree battery. (Doc. No. 1.) For the following reasons, the Court recommends the District Court deny Mr. Stiggers's petition.

I.  APPLICABLE FACTS

Wardell Newsome, the victim of the battery, was the only eye witness to the incident. (Doc. No. 10-5.) He testified at trial as to the events of January 10, 2003. (*Id.*).

However, Mr. Stiggers presented circumstantial evidence to the Pulaski County Circuit Court in his Rule 37 petition about which he believes four witnesses that his attorney did not interview or call would have testified. (Doc. No. 10-7.)

    A.    THE INCIDENT

Mr. Newsome testified that on January 10, 2003, he borrowed a friend's car and picked up Raynaud Muldrew. (Doc. No. 10-5 at 1.) After purchasing some marijuana, they went to a liquor store. (*Id.*). Mr. Stiggers, who was also at the liquor store, asked Mr. Newsome for a ride to Hollingsworth Courts. (*Id.*). In the car, Mr. Stiggers sat directly behind Mr. Newsome. (*Id.*). Mr. Stiggers became aggressive during the ride and started yelling. (*Id.*). Mr. Newsome turned around and saw that Mr. Stiggers had a gun. (*Id.*). Mr. Newsome testified that during the ride, Mr. Stiggers "told them to 'say goodnight' and 'say your prayers' because he was going to kill them." (*Id.*). Mr. Newsome did not believe Mr. Stiggers because they had known each other for years. (*Id.*).

Mr. Newsome testified that while the car was arriving at Hollingsworth Courts, Mr. Stiggers shot Mr. Newsome behind the left ear, and Mr. Newsome lost consciousness. (*Id.*). When he regained consciousness, he noticed that Mr. Muldrew was slumped over in the front passenger seat. (*Id.*). Mr. Newsome testified that he jumped out of the car "with the car still running, in drive, and with the lights still on." (*Id.* at 3.) When the police arrived, "the car was in park and the lights were turned off." (*Id.* at 3-4.) Mr. Newsome identified Mr. Stiggers as the shooter. (*Id.* at 4.) He then picked Mr.

Stiggers's picture out of a photograph array presented by Detectives Knowles and Cockrell. (*Id.*).

  B. THE "JASON" WITNESSES

During the police investigation, two of Mr. Muldrew's friends presented evidence that they believed a man named Jason was the shooter. (Doc. No. 10-7.) Temika Donley allegedly would have testified that she was Mr. Muldrew's girlfriend at the time of the shooting. (*Id.* at 17.) According to an interview she gave at the Little Rock Police Department, Ms. Donley stated that Mr. Muldrew told her that Jason Walker ("Jason") was threatening Mr. Muldrew and his family because Jason believed Mr. Muldrew broke into Jason's house. (*Id.*). She also stated that her friend Angel called her and told her that Angel's friend Carlisha said Cricket shot Mr. Muldrew. (*Id.* at 18-19.) Ms. Donley did not know Cricket's real name. (*Id.* at 19.)

Kristopher Johnson also gave an interview at the Little Rock Police Department. (*Id.* at 20.) He stated that four or five days prior to the shooting, Mr. Muldrew bought some marijuana from Jason Steals (also "Jason"). (*Id.* at 21.) After the purchase, Jason called Mr. Muldrew and accused him of stealing about fifteen pounds of marijuana. (*Id.* at 22.) Mr. Johnson told police that Jason said that Mr. Muldrew would "pay the consequence" for stealing the marijuana. (*Id.*). Mr. Johnson told police that the "word . . . around town" is that Jason paid someone from east Little Rock to kill Mr. Muldrew. (*Id.* at 23.)

Mr. Pride, whose testimony was not known to the circuit court at the time of trial,

allegedly would have testified that Mr. Newsome admitted that Jason Walker was the person who shot Mr. Muldrew. (Doc. No. 10-9 at 5.)

Damika Mitchell did not know Mr. Muldrew, but she heard the shots fired that resulted in Mr. Muldrew's death. (*Id.*). She would have testified that before the police arrived on the scene, the vehicle driven by Mr. Newsome was parked with the lights off. (*Id.*).

II.   PROCEDURAL HISTORY

On April 8, 2005, the Pulaski County Circuit Court held a hearing pursuant to *Zinger v. State*, 852 S.W.2d 320 (1993) (holding that evidence tending to show a third party may have committed the crime is inadmissible unless there is "direct or circumstantial evidence linking the third person to the actual perpetration of the crime"). (Doc. No. 10-1 at 6.) The State sought to exclude evidence that "Jason" was the shooter because the testimony was inadmissible hearsay. (*Id.*). The Court granted the State's *Zinger* motion. (*Id.*). Therefore, trial counsel did not call Mr. Pride, Ms. Mitchell, Ms. Donley, or Mr. Johnson at trial. (*Id.*).

On June 16, 2005, a Pulaski County Circuit Court jury found Mr. Stiggers guilty of first degree murder and first degree battery. (Doc. No. 10-2 at 1-2.) The court sentenced him to serve sixty years in the Arkansas Department of Correction. (*Id.* at 4.)

On February 6, 2006, Mr. Stiggers filed an appeal in the Arkansas Court of Appeals, arguing that the evidence was insufficient to sustain a first degree murder verdict. (Doc. No. 10-3.) On May 31, 2006, the court affirmed the jury verdict. (Doc.

5

No. 10-5.) It found that Mr. Stiggers's version of events was not consistent with the weight of the evidence, and ultimately the case was decided by the jury's determination of the witnesses' credibility. (*Id.* at 3-4.) Since "[s]ubstantial evidence exists to support [Mr. Stiggers's] conviction," the court affirmed. (*Id.*).

On August 17, 2006, Mr. Stiggers filed a petition for post-conviction relief in the Pulaski County Circuit Court pursuant to Arkansas Rule of Criminal Procedure 37 ("Rule 37"). (Doc. No. 10-6.) On November 2, 2011, Mr. Stiggers amended his Rule 37 petition. (Doc. No. 10-7.) In his amended petition, Mr. Stiggers argued that his trial counsel was ineffective for failing to interview or call to testify the Jason witnesses, who would have presented testimony tending to prove that "Jason" was the shooter. (*Id.* at 2.) He also claimed that his counsel was ineffective for failing to challenge the constitutionality of *Zinger*. (*Id.* at 3.)

On November 15, 2012, the Pulaski County Circuit Court denied Mr. Stiggers's petition. (Doc. No. 10-8.) The court held that trial counsel was ethically bound to investigate the statements and interview the Jason witnesses. (*Id.* at 2.) Without holding so, the court implied that trial counsel was deficient. (*Id.* at 3.) However, the court held that trial counsel's deficiency did not prejudice Mr. Stiggers. (*Id.*). It held that since Mr. Newsome–someone who knew Mr. Stiggers for years–testified that Mr. Stiggers was the shooter, there was direct evidence to support the verdict. (*Id.*). It also held that anything the Jason witnesses would have attempted to testify about reports that Jason threatened to kill the victim would have been inadmissible hearsay. (*Id.*).

On April 24, 2014, the Arkansas Supreme Court affirmed the Rule 37 court's decision. (Doc. No. 10-11.) It held that trial counsel's performance was not deficient. (*Id.* at 8.) It found that trial counsel's decision to not interview the Jason witnesses "was based on reasonable professional judgment" since the testimony was inadmissible pursuant to *Zinger* and inadmissible hearsay. (*Id.* at 9.) Further, it held that if trial counsel's performance was deficient, it did not prejudice Mr. Stiggers. (*Id.*). It found that Mr. Stiggers did not produce any facts that prove that he was prejudiced by trial counsel's decision to not interview the Jason witnesses. (*Id.*). Lastly, it held that if trial counsel had called Ms. Mitchell to contradict Mr. Newsome's testimony about whether the lights of the car were on, the outcome of the trial would not have been different. (*Id.* at 10.)

On June 4, 2014, Mr. Stiggers filed this petition for a writ of habeas corpus. (Doc. No. 1.) On August 1, 2014, Respondent filed her response brief. (Doc. No. 10.) On September 4, 2014, Mr. Stiggers filed a Traverse to Respondent's brief. (Doc. No. 13.)

III.   STANDARD OF REVIEW

A district court has jurisdiction to entertain writs of habeas corpus on behalf of people in custody pursuant to state court judgments. 28 U.S.C. § 2254(a) (2006). The only issue the district court may consider is whether a prisoner is in custody "in violation of the Constitution or laws or treaties of the United States." *Id.*

A court may not grant a petition for a writ of habeas corpus unless the applicant exhausts the "remedies available in the courts of the State" prior to filing the petition.

*Id*. at (b)(1)(A). A petitioner "must present his federal claims to the state courts in a timely or procedurally correct manner in order to provide the state courts an opportunity to decide the merits of those claims." *Kennedy v. Delo*, 959 F.2d 112, 115 (8th Cir. 1992). Failure to do so will result in his claims being barred "unless [he] can demonstrate cause for the default and actual prejudice as a result of the violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Harris v. Lockhart*, 948 F.2d 450, 452 (8th Cir. 1991) (quoting *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)).

If a petitioner raises a claim that was fairly presented and adjudicated on the merits in state court, the federal court can overturn the state court's decision only if it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). A factual determination by the state court is "presumed correct," and a petitioner can only rebut that presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

IV.   ANALYSIS

In Mr. Stiggers's petition for a writ of habeas corpus, he raises three grounds for which he believes he is entitled relief: (1) ineffective assistance of trial counsel for not investigating the claims of the Jason witnesses; (2) ineffective assistance of collateral counsel for not investigating the claims of the Jason witnesses; (3) ineffective assistance of trial counsel for failing to challenge the constitutionally of *Zinger*.

>    A.   THE ARKANSAS SUPREME COURT DID NOT UNREASONABLY APPLY FEDERAL LAW WHEN IT DENIED MR. STIGGERS'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS FOR FAILING TO INTERVIEW OR CALL TO TESTIFY THE JASON WITNESSES.

Mr. Stiggers's first claim is that his trial counsel was ineffective for failing to interview or call to testify the Jason witnesses. (Doc. No. 1 at 7.) Respondent concedes that this claim was fairly presented to the highest state court. (Doc. No. 10 at 3.) She claims that the Arkansas Supreme Court did not unreasonably apply federal law in denying Mr. Stiggers's claim. (*Id.*). Mr. Stiggers also claims that failing to interview the witnesses is not a "strategic" choice because it was not reasonable. (*Id.*). He claims that the Arkansas Supreme Court did not determine whether the ineffectiveness of Mr. Stiggers's trial counsel prejudiced him. (Doc. No. 13 at 3.)

To prevail on an ineffective assistance of counsel claim, a petitioner must show that "his counsel's deficient performance prejudiced him." *Porter v. McCollum*, 558 U.S. 30, 38 (2009); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must prove his counsel was deficient by showing that "his counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The petitioner must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

The Arkansas Supreme Court correctly applied the *Strickland* standard to Mr. Stiggers's claims. (Doc. No. 10-11 at 8-9.) Regarding the testimony of Ms. Donley, Mr. Johnson, and Mr. Pride, the court held that "the record supports that defense counsel's

decision to not interview or call the witnesses was based on reasonable professional judgment." (*Id.*). Trial counsel's strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 691.

Here, the court determined that the "testimony was inadmissible pursuant to *Zinger*, as it did no more than create an inference or conjecture as to 'Jason's' involvement, the testimony was hearsay, and Stiggers failed to demonstrate that it was admissible." (*Id.*). These factors support trial counsel limiting his investigation into the Jason witnesses. Mr. Stiggers has failed to prove that the Arkansas Supreme Court's application of *Strickland* was unreasonable, and he has not produced clear and convincing evidence that any facts the court relied upon to make its ruling were incorrect. Therefore, Mr. Stiggers's ineffective assistance of trial counsel claim should be denied.

Even if trial counsel was deficient under *Strickland*, the Arkansas Supreme Court correctly determined that trial counsel's deficiency did not prejudice Mr. Stiggers. (*Id.*). The court held that if trial counsel had interviewed these witnesses, Mr. Stiggers did not present any facts that show that there is a reasonable probability that the outcome at trial would have been different. (*See id.*). Mr. Stiggers does not show that the Arkansas Supreme Court's application of *Strickland*'s prejudice prong was unreasonable, and he did not present clear and convincing evidence that any factual findings by the Arkansas Supreme Court were incorrect. Therefore, even if trial counsel's performance was

10

deficient, Mr. Stiggers's ineffective assistance of trial counsel claim should be denied because trial counsel's deficient performance did not prejudice Mr. Stiggers.

With regard to Ms. Mitchell's testimony, the Arkansas Supreme Court did not determine whether trial counsel was deficient under *Strickland*'s first prong. (*Id.* at 9-10.) The court held, however, that if trial counsel had interviewed Ms. Mitchell and called her to testify, the outcome at trial would not have been different. (*Id.* at 10.) Specifically, it found that "defense counsel testified that he cross-examined every witness that came in contact with the vehicle." (*Id.*). Therefore, based on the record, Mr. Stiggers could not prove that one more witness testifying about whether the car lights were on would discredit Mr. Newsome's testimony. (*See id.*). Mr. Stiggers does not show that the Arkansas Supreme Court's application of the prejudice prong of the *Strickland* standard was unreasonable, nor did he present clear and convincing evidence that the facts relied upon by the Arkansas Supreme Court were incorrect. Therefore, this ineffective assistance of trial counsel claim should also be denied.

B. MR. STIGGERS'S INEFFECTIVE ASSISTANCE OF COLLATERAL COUNSEL CLAIM IS NOT COGNIZABLE UNDER THE HABEAS STATUTE.

Mr. Stiggers claims that his counsel during his state collateral proceedings was ineffective for failing to interview and call to testify the Jason witnesses. (Doc. No. 1 at 8.) "The ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i) (2006). Therefore, this claim should be denied.

### C. MR. STIGGERS'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM FOR FAILING TO CHALLENGE THE CONSTITUTIONALITY OF *ZINGER* IS PROCEDURALLY DEFAULTED.

Mr. Stiggers's final ground for relief is that his trial counsel was ineffective for failing to challenge the constitutionality of *Zinger*. (Doc. No. 1 at 12.) Mr. Stiggers mentioned this ground for relief in his amended Rule 37 petition. (Doc. No. 10-7 at 3.) However, he did not state why *Zinger* would be unconstitutional, and the circuit court did not consider this ground. (*See* Doc. No. 10-8.) Mr. Stiggers did not appeal this ground to the Arkansas Supreme Court. (*See* Doc. No. 10-9.) Since this claim has not been fairly presented to the highest state court, it is procedurally defaulted.

Mr. Stiggers's petition could be liberally construed to claim that the exception in *Martinez v. Ryan*, 132 S.Ct 1309 (2012), excuses his default in this case. (Doc. No. 1 at 5, 8.) A procedural default does not bar a "substantial claim of ineffective assistance of trial counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320. A "substantial claim" does not include claims that are without merit or "wholly without factual support." *Id.* at 1319. The Eighth Circuit has applied this exception to Rule 37 petitions. *Sasser v. Hobbs*, 735 F.3d 833, 853 (2013). This exception only applies to ineffective assistance of trial counsel claims, and is not extended to ineffective assistance of appellate counsel claims. *Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014) (pet. for cert. filed, No. 14-8782 (Mar. 10, 2015)).

Mr. Stiggers's claim is not substantial, so the *Martinez* exception does not apply.

The Eighth Circuit has held that the Supreme Court's reasoning in *Holmes v. South Carolina*, 547 U.S. 319 (2006), "almost certainly affirms the constitutionality of Arkansas's *Zinger* rule . . . ." *Armstrong v. Hobbs*, 698 F.3d 1063, 1067 (8th Cir. 2012). "At the very least, *Holmes* indicates the rule in *Zinger* is not contrary to clearly established federal law." *Id.* Therefore, under the *Strickland* standard, Mr. Stiggers's trial counsel was not deficient for failing to challenge the constitutionality of *Zinger* since that challenge would not likely succeed. Since Mr. Stiggers's claim has no merit, it is not substantial under *Martinez*. Mr. Stiggers presents no other cause for his procedural default, so this claim should be denied.

IV.     CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court, the District Court must determine whether to issue a certificate of appealability in its final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2) (2006). The Court finds no issue on which the petitioner has made a substantial showing of a denial of a constitutional right. Thus, the District Court should not issue a certificate of appealability.

IV.     CONCLUSION

Mr. Stiggers does not present a claim to which he is entitled relief, and his petition for a writ of habeas corpus (Doc. No. 1) should be denied with prejudice. The District Court should not issue a certificate of appealability.

IT IS SO ORDERED this 1st day of April, 2015.

_____
United States Magistrate Judge